## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JOHN GRANDE, | : | CIVIL ACTION NO: 3:24-cv-00010-SFR |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| HARTFORD BOARD OF EDUCATION; | : |  |
| LESLIE TORRES-RODRIGUEZ, in her | : |  |
| individual capacity and her official capacity | : |  |
| as Superintendent of Hartford Public | : |  |
| Schools; EDWARD WILSON, JR., in his | : |  |
| individual capacity and his official capacity | : |  |
| as Staff Attorney/Executive Director of | : |  |
| Internal Investigations and Security of | : |  |
| Hartford Public Schools; and TRACY | : |  |
| AVICOLLI, in her individual capacity and | : |  |
| her official capacity as Director of Arts | : |  |
| and Wellness for Hartford Public Schools, | : |  |
| Defendants. | : | FEBRUARY 5, 2025 |
|  | : |  |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**DEFENDANTS,
HARTFORD BOARD OF EDUCATION,
LESLIE TORRES-RODRIGUEZ,
EDWARD WILSON, JR., and
TRACY AVICOLLI**

By:    */s/ Margaret J. Strange*
Margaret J. Strange (ct08212)
Margaret.Strange@jacksonlewis.com
Sara R. Simeonidis (ct25566)
Sara.Simeonidis@jacksonlewis.com
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 1

        A.     Plaintiff's Employment With the District ............................................... 1

        B.     Plaintiff's Inappropriate Comments During the Professional Development Training............................................................................................................. 2

        C.     The District's Investigation and Plaintiff's Letter of Reprimand ........................... 4

        D.     Plaintiff's Retirement From the District ................................................ 7

III.    PROCEDURAL HISTORY ................................................................................ 7

IV.     LEGAL ANALYSIS ........................................................................................... 8

        A.     Summary Judgment Standard ................................................................. 8

        B.     Plaintiff's Claims Against Ms. Torres-Rodriguez, Mr. Wilson and Ms. Avicolli Fail as a Matter of Law ............................................................................. 9

               1.     Judgment should enter in favor of the Individual Defendants on Plaintiff's section 1983 claims because they are duplicative of his   claims against the District.................................................................................................9

               2.     Judgment should enter in favor of the Individual Defendants because they are entitled to qualified immunity. ..................................................................10

        C.     Defendants Are Entitled to Summary Judgment on Plaintiff's First Amendment Retaliation Claim ..................................................................... 12

               1.     Plaintiff did not speak as a private citizen on a matter of public concern....13

               2.     Plaintiff's speech was pursuant to his "official duties" and not as a private citizen. .............................................................................................16

               3.     The District had a legitimate interest in restricting injurious speech. ..........17

        D.     Defendants Are Entitled To Summary Judgment On Plaintiff's "Compelled Speech" Claim ..................................................................... 19

V.      CONCLUSION ................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      **Page(s)**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 ................................................................................................................9

*Bailey v. Riehl,*
    No. 3:24cv00993, 2024 U.S. Dist. LEXIS 215945 (D. Conn. Nov. 27, 2024).......................11

*Bd. of Educ., Island Trees Sch. Dist. No. 26 v. Pico,*
    457 U.S. 853 (1982)......................................................................................................13

*Brown v. Chicago Bd. Of Educ.,*
    824 F.3f 713 (7th Cir. 2015) ........................................................................................18

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)......................................................................................................10

*Condon v. Town of Brookfield,*
    No. 3:23cv00695, 2024 U.S. Dist. LEXIS 149156 (D. Conn. Aug. 20, 2024).......................11

*Connick v. Myers,*
    461 U.S. 138 (1983).............................................................................................. *passim*

*Cornejo v. Bell,*
    592 F.3d 121 (2d Cir. 2010).........................................................................................13

*Demski v. Town of Enfield,*
    No. 3:14cv01568, 2015 U.S. Dist. LEXIS 95116 (D. Conn. July 22, 2015) ........................10

*Ezekwo v. New York City Health & Hospitals Corp.,*
    940 F.2d 775 (2d Cir. 1991)...................................................................................15, 17

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006)............................................................................................. *passim*

*Grillo v. N.Y.C. Transit Auth.,*
    291 F.3d 231 (2d Cir. 2002)............................................................................15, 16, 19

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)..................................................................................................11, 12

*Jackler v. Byrne,*
    658 F.3d 225 (2d Cir. 2011).......................................................................................16, 18

*Janus v. AFSCME, Council 31,*
    585 U.S. 878 ...............................................................................................................20

*Jean v. Cnty. of Nassau,*
No. 14cv1322, 2020 U.S. Dist. LEXIS 45279 (E.D.N.Y. Mar. 16, 2020) ............................11

*Johnson v. Poway Unified Sch. Dist.,*
658 F.3d 954 (9th Cir. 2011) .................................................................................................16

*Knight v. U.S. Fire Ins. Co.,*
804 F.2d 9 (2d Cir. 1986).........................................................................................................9

*Lee v. Connecticut,*
427 F. Supp. 2d 124 (D. Conn. 2006)......................................................................................9

*Lee-Walker v New York City Dep't of Educ.,*
220 F. Supp. 3d 484 (S.D.N.Y. 2016)............................................................................13, 16

*Littlejohn v. City of New York,*
795 F.3d 297 (2d Cir. 2015)...................................................................................................11

*Lynch v. Ackley,*
811 F.3d 569 (2d Cir. 2016).............................................................................................12, 17

*Payson v. Board of Education of Mount Pleasant Cottage School,*
No. 14cv9696, 2017 U.S. Dist. LEXIS 154296 (S.D.N.Y. Sep. 20, 2017) ............................12

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,*
391 U.S. 563 (1968)..........................................................................................................14, 18

*Piggee v. Carl Sandburg Coll.,*
464 F.3d 667 (7th Cir. 2006) .................................................................................................19

*Raspardo v. Carlone,*
770 F.3d 97 (2d Cir. 2014)...............................................................................................11, 12

*Reynolds v. Giuliani,*
506 F.3d 183 (2d Cir. 2007)...................................................................................................10

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
547 U.S. 47 (2006)..................................................................................................................20

*Smith v. County of Suffolk,*
776 F.3d 114 (2d Cir. 2015)...................................................................................................13

*Sousa v. Roque,*
578 F.3d 164 (2d Cir. 2009)...................................................................................................15

*W. Va. State Bd. of Educ. v. Barnette,*
319 U.S. 624 (1943)................................................................................................................20

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000)......................................................................................9

*Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
593 F.3d 196 (2d Cir. 2010)..............................................................................14, 17

*West v. Atkins*,
487 U.S. 42 (1988)..............................................................................................13

*Williams v. New York City Dept. of Correction*,
No. 19cv5200, 2020 U.S. Dist. LEXIS 16241 (S.D.N.Y. Jan. 30, 2020)................................17

*Wooley v. Maynard*,
430 U. S. 705 (1977).............................................................................................20

*Ying Jing Gan v. City of New York*,
996 F.2d 522 (2d Cir. 1993)...............................................................................11, 12

## Other Authorities

First Amendment ....................................................................................... *passim*

Fourteenth Amendment ...............................................................................13

## I.    INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56 of this Court, Defendants Hartford Board of Education, Leslie Torres-Rodriguez, Edward Wilson, Jr. and Tracy Avicolli (collectively "Defendants") move for summary judgment as to all counts of Plaintiff John Grande's two-count Complaint dated January 3, 2024. Summary Judgment is appropriate based on Plaintiff's deposition testimony and other evidence which establishes that there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment should be granted, and judgment should enter for Defendants.

## II.    FACTUAL BACKGROUND[1]

### A.  __Plaintiff's Employment With the District__

Plaintiff commenced employment with the Hartford Board of Education (the "District") in 1989 as a physical education teacher. (56(a)(1) Stmt. ¶ 1.)[2] The Hartford Board of Education oversees the operation of the Hartford Public Schools. (Id. ¶ 2.) Hartford Public Schools is one of the largest school districts in Connecticut with approximately 3500 employees working in 39 schools serving 16,500 students. (Id. ¶ 3.) The District is an equal employment opportunity employer with strong discrimination policies. (Id. ¶ 4.) The District also has a policy regarding employee freedom of speech. (Id. ¶ 5.)

In May 2006, Plaintiff received a counseling letter following an internal investigation into an incident involving Plaintiff's alleged restraint of a student during a physical education class.

---

[1]  While not all of Plaintiff's statements and characterizations are factually accurate, they are proximate enough for the purpose of this motion and therefore are accepted as true and used by Defendants for purposes of this motion only. Defendants reserve the right to dispute such testimony and to correct same should further litigation be necessary.

[2]  Citations to the factual record are found in Defendants' Rule 56(a)(1) Statement of Undisputed Facts filed contemporaneously herewith.

(56(a)(1) Stmt. ¶ 6.) The District advised Plaintiff to "take great care in the future to facilitate social development and to be sensitive to the needs of emotionally fragile students." (<u>Id.</u> ¶ 7.) The District also advised Plaintiff that future misconduct could lead to disciplinary action, up to and including termination of employment. (<u>Id.</u> ¶ 8.)

In March 2017, Plaintiff received a documented verbal warning for threatening and intimidating behavior and was required to attend harassment training. (56(a)(1) Stmt. ¶ 9.) Once again, the District advised Plaintiff that future misconduct could lead to disciplinary action, up to and including termination of employment. (<u>Id.</u> ¶ 10.)

**B. <u>Plaintiff's Inappropriate Comments During the Professional Development Training</u>**

Effective March 17, 2020, Hartford Public Schools closed to in-person instruction in compliance with Governor Ned Lamont's Executive Order in response to the Covid-19 pandemic. (56(a)(1) Stmt. ¶ 11.) In the fall of 2020, Plaintiff still was teaching remote physical education classes to his students. (<u>Id.</u> ¶ 12.) Plaintiff's direct supervisor at the time was Tracy Avicolli, the Director of Arts and Wellness. (<u>Id.</u> ¶ 13.) Ms. Avicolli, in her role as Director of Arts and Wellness, sent a survey to teachers within her department regarding the level of student engagement during remote classes. (<u>Id.</u> ¶ 14.)

Plaintiff acknowledged that "[n]ot many [students] showed up" for Plaintiff's remote physical education classes during this time period. (56(a)(1) Stmt. ¶ 15.) Plaintiff did not know why so many students did not come to class but thought "[t]hey probably didn't have somebody at home that had to get them on [the computer]." (<u>Id.</u> ¶ 16.) Plaintiff never attempted to find out why so many students were not attending his remote classes. (<u>Id.</u> ¶ 17.) Plaintiff admitted that "[i]f [students] are not showing up for class there's a problem with engagement." (<u>Id.</u> ¶ 18.) These issues were not unique to the Hartford Public Schools. There was a "national issue with student

2

engagement and how to engage students in [remote] learning." (<u>Id.</u> ¶ 19.)

Ms. Avicolli determined that the results of those surveys "[w]arranted some more learning on how to increase student engagement in remote classes as this was a very difficult time for our students." (56(a)(1) Stmt. ¶ 20.) As a result, Ms. Avicolli, in her role as Director of Arts and Wellness, scheduled a professional development training that was intended to address student engagement and "how we can better relate to our students in an environment that was very challenging." (<u>Id.</u> ¶ 21.) Ms. Avicolli, in her role as Director of Arts and Wellness, developed the professional development training program to align with the student engagement data for remote classes in physical education and unified arts. (<u>Id.</u> ¶ 22.) The District's English/Language Arts Department had recently done a similar professional development training "and it had gone very well and so based on their feedback and experience with their teachers in the Hartford Public Schools" Ms. Avicolli chose to use the presentation for an upcoming professional development training for the Unified Arts Department. (<u>Id.</u> ¶ 23.)

On October 28, 2020, Ms. Avicolli, in her role as Director of Arts and Wellness, facilitated the professional development training.[3] (56(a)(1) Stmt. ¶ 24.) Plaintiff participated in the October 28, 2020 professional development training. (<u>Id.</u> ¶ 26.) The training was mandatory for the entire Unified Arts Department and part of his job duties to attend. (<u>Id.</u> ¶ 27.) The District requires that teachers participate in professional development training as part of their job responsibilities. (<u>Id.</u> ¶ 28.) In fact, Plaintiff participated in many professional development trainings throughout his tenure with the District. (<u>Id.</u> ¶ 29.)

At the start of the professional development training, Ms. Avicolli presented the student engagement data she received from the surveys previously provided by the teachers in the Unified

---

[3] Leslie Torres-Rodriguez, Superintendent of the Hartford Public Schools, played no role in the October 28, 2020 professional development training for the Unified Arts Department. (<u>Id.</u> ¶ 25.)

Arts Department. (56(a)(1) Stmt. ¶ 30.) The professional development training then related the student engagement data to the Hartford Public School's Instructional Vision for students. (Id. ¶ 31.)

At the conclusion of the training, teachers were instructed to break up into smaller breakout groups to discuss how it felt to engage in an activity that was part of the training. (56(a)(1) Stmt. ¶ 32.) The teachers attending the professional development training were told they did not have to share their feelings with the training exercise in the smaller group discussions if they were not comfortable doing so. (Id. ¶ 33.) Plaintiff understood this meant that he did not have to speak at all during the small group discussion. (Id. ¶ 34.) The teachers attending the professional development training also were told "to agree to disagree respectfully." (Id. ¶ 35.) The District has policies requiring teachers and other staff to engage professionally with their colleagues. (Id. ¶ 36.)

Some of the teachers attending the small group discussion with Plaintiff chose not to share their feelings on the training exercise. (56(a)(1) Stmt. ¶ 37.) While the discussion group "started off quiet," Plaintiff "opened it up by saying that I just got man bashed and white shamed, but I'm going to sit there quietly." (Id. ¶ 38.) Plaintiff also said, "I'm not buying into that white bashing BS." (Id. ¶ 39.) Plaintiff admits that "universally when someone says that's BS it would stand for bullshit." (Id. ¶ 40.) Plaintiff voluntarily chose to make those comments during the professional development training. (Id. ¶ 41.)

### C.  The District's Investigation and Plaintiff's Letter of Reprimand

A teacher in Plaintiff's small group discussion complained about the comments Plaintiff made during the professional development training. (56(a)(1) Stmt. ¶ 42.) The teacher sent an e-mail to Ms. Avicolli shortly after the professional development training. (Id. ¶ 43.) Plaintiff did not know this teacher and never spoke with her prior to the professional development training. (Id.

¶ 44.)

The District commenced an investigation into the teacher's complaint about Plaintiff's comments during the professional development training. (56(a)(1) Stmt. ¶ 45.) Edward Wilson, the District's Executive Director of Internal Investigations and Security, appointed Suhail Aponte to investigate the complaint against Plaintiff.[4] (Id. ¶ 47.) Ms. Aponte was a Labor Investigator/Information Specialist for the District. Among her duties was investigating employee misconduct. (Id. ¶ 48.) The District identified the teachers who participated in the breakout room with Plaintiff during the professional development training on October 28, 2020. (Id. ¶ 49.) Ms. Aponte proceeded to schedule interviews with each of the teachers who the District identified as potential witnesses to the complaint about Plaintiff. (Id. ¶ 50.) Ms. Aponte's process when investigating was to meet with witnesses (remotely at the time) and then prepare written statements for the witnesses to review and approve. (Id. ¶ 51.)

Ms. Aponte interviewed the complaining teacher as part of her investigation, and she confirmed that Plaintiff stated "I am not buying into this white-bashing bullshit" in the breakout room for the professional development training. The teacher explained that Plaintiff's statement was "very disturbing," "deeply affects the community" served by Hartford Public Schools and "was disrespectful to the work that we are trying to get started in our department." (56(a)(1) Stmt. ¶ 52.) Ms. Aponte then interviewed a second teacher from the breakout session who reported that Plaintiff was very dismissive and said: "I don't know about you guys, but I'm not buying into this white bashing bullshit." According to this teacher, the small group discussion was "very uncomfortable" as a result of Plaintiff's comments. (Id. ¶ 53.) Ms. Aponte interviewed a third teacher who reported that Plaintiff's statements in the small group session "shifted the mood and

---

[4] Prior to October 2020, Mr. Wilson had not met Plaintiff and no one in the District ever spoke to Mr. Wilson about Plaintiff. (Id. ¶ 46.)

the tone in the breakout room." (Id. ¶ 54.) The remaining teachers who were in the breakout room with Plaintiff advised Ms. Avicolli that they could not recall Plaintiff's exact comments, with one teacher reporting that he "[did] not remember hearing swear words." (56(a)(1) Stmt. ¶ 55.)

In January 2021, Ms. Aponte also contacted Plaintiff as part of the District's investigation. (56(a)(1) Stmt. ¶ 56.) Plaintiff participated in the District's investigation and answered questions posed by Ms. Aponte. (Id. ¶ 57.)

After Ms. Aponte completed her investigation, she provided an investigation file to Mr. Wilson which included all of the statements she obtained as part of her investigation. (56(a)(1) Stmt. ¶ 58.) Mr. Wilson, in his role as Executive Director of Internal Investigations, reviewed the investigative file and decided to schedule a pre-disciplinary meeting with Plaintiff. (Id. ¶ 59.) At that time, Mr. Wilson had not decided whether Plaintiff should be disciplined for his conduct during the professional development training. (Id.)

In October 2021, Edward Wilson, in his role as Executive Director of Internal Investigations, met with Plaintiff. (56(a)(1) Stmt. ¶ 60.) During the pre-disciplinary hearing, Plaintiff answered questions posed by Mr. Wilson. (Id.) Plaintiff also shared his opinion that the content of the professional development training was not relevant to his work as a physical education teacher. (Id. ¶ 61.)

After reviewing the investigation file, including witness statements, and meeting with Plaintiff and considering all information provided by Plaintiff in writing and during the pre-disciplinary meeting, Mr. Wilson, in his role as Executive Director of Internal Investigations, made the determination that Plaintiff used inappropriate language during the professional development breakout session on October 28, 2020. (56(a)(1) Stmt. ¶ 62.) Mr. Wilson, in his role as Executive Director of Internal Investigations, made the decision to discipline Plaintiff because of what he

6

said and "how he communicated out in the breakout room, which impacted the training session." (Id. ¶ 63.) Mr. Wilson was the sole decisionmaker for the decision to discipline Plaintiff. (Id. ¶ 64.) Mr. Wilson was not directed to discipline Plaintiff by anyone, and Mr. Wilson did not consult with any of his supervisors prior to issuing the letter of reprimand. (Id.)

At the conclusion of the District's investigation, Plaintiff received a written letter of reprimand "for making inappropriate and unprofessional comments" in the professional development small group discussion he attended on October 28, 2020. (56(a)(1) Stmt. ¶ 65.) Plaintiff was warned that future misconduct could lead to disciplinary action, including termination of employment. (Id. ¶ 66.)

### D. **Plaintiff's Retirement From the District**

Plaintiff continued to work at the District after receiving the letter of reprimand and ultimately retired from the District on October 1, 2024 after working for the District for thirty-five years. (56(a)(1) Stmt. ¶ 67.)

## III.   **PROCEDURAL HISTORY**

On January 3, 2024, Plaintiff filed this action against Hartford Board of Education (the "District"), Leslie Torres-Rodriguez, in her individual capacity and her official capacity as Superintendent of Hartford Public Schools ("Ms. Torres-Rodriguez"), Edward Wilson, Jr., in his individual capacity and his official capacity as Staff Attorney/Executive Director of Internal Investigations and Security of Hartford Public Schools ("Mr. Wilson"), and Tracy Avicolli, in her individual capacity and her official capacity as Director of Arts and Wellness for Hartford Public Schools ("Ms. Avicolli"). Plaintiff alleges the following counts against all four Defendants: (1) retaliation in violation of the First Amendment; and (2) compelled speech in violation of the First Amendment. (Compl., Dkt. No. 1.)

IV.     **LEGAL ANALYSIS**

A.  **Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact*." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (citations omitted; emphasis in original). "Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Lee v. Connecticut, 427 F. Supp. 2d 124, 130 (D. Conn. 2006) (emphasis in original). For purposes of summary judgment, a fact is "material" if it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are insufficient to preclude summary judgment. Anderson, at 248. Likewise, an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The Second Circuit has encouraged the use of summary judgment for the disposition of cases. "Properly used, summary judgment permits a court to streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." Knight v. U.S. Fire Ins.

Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). As explained by the Supreme Court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations omitted).

**B.  Plaintiff's Claims Against Ms. Torres-Rodriguez, Mr. Wilson and Ms. Avicolli Fail as a Matter of Law**

Plaintiff alleges that Ms. Torres-Rodriguez, Mr. Wilson and Ms. Avicolli (collectively the "Individual Defendants") retaliated against him and violated his First Amendment rights to free speech and association (Compl., Count One, ¶ 103) and compelled him to "pledge his support for their advancement of critical race theory and opinions regarding racial privilege…." (Compl., Count Two, ¶s 115-116.) Plaintiff brings his section 1983 claims against the Individual Defendants both in their official capacities as employees of the Board and in their individual capacities. (See generally Compl.) Plaintiff's claims against the Individual Defendants fail as a matter of law.

**1.  Judgment should enter in favor of the Individual Defendants on Plaintiff's section 1983 claims because they are duplicative of his claims against the District.**

It is well settled that "[a]n official capacity suit against a public servant is treated as one against the governmental entity itself." Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir. 2007). As such, "district courts within the Second Circuit consistently dismiss as duplicative claims asserted against officials in their official capacities where the plaintiff has named the municipal entity as a defendant." Demski v. Town of Enfield, No. 3:14cv01568, 2015 U.S. Dist. LEXIS 95116, at *6 (D. Conn. July 22, 2015) (collecting cases). Here, Plaintiff brings identical section 1983 claims against the Board and the Individual Defendants acting in their official capacities as employees of the Board. Accordingly, to the extent Plaintiff asserts section 1983 claims against the Individual Defendants in

their official capacities, Ms. Torres-Rodriguez,[5] Mr. Wilson and Ms. Avicolli are entitled to judgment as a matter of law on Counts One and Two of the Complaint. Jean v. Cnty. of Nassau, No. 14cv1322, 2020 U.S. Dist. LEXIS 45279, at *17 n.6 (E.D.N.Y. Mar. 16, 2020) (dismissing official capacity claim on summary judgment where the municipal entity was named in the complaint); Chiaravallo v. Middletown Transit District, ** (D. Conn. Sept. 22, 2021) (same).

### 2. Judgment should enter in favor of the Individual Defendants because they are entitled to qualified immunity.

When a state or local official is sued for damages in their individual capacity, they may, "depending . . . on the nature of the function[s he] perform[s] . . . be entitled to . . . qualified immunity." Bailey v. Riehl, No. 3:24cv00993, 2024 U.S. Dist. LEXIS 215945, at *18 (D. Conn. Nov. 27, 2024) (citations omitted). The U.S. Supreme Court has instructed that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as of the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by qualified immunity." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citing cases); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"[T]he doctrine of qualified immunity protects government officials from suits brought

---

[5] Ms. Torres-Rodriguez is entitled to summary judgment for the additional reason that she was not personally involved in the District's investigation or the issuance of the letter of reprimand to Plaintiff. An individual may be held liable under section 1983 only if she was "personally involved in the alleged deprivation" of a constitutional right. Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (internal citation and quotation marks omitted). See also Condon v. Town of Brookfield, No. 3:23cv00695, 2024 U.S. Dist. LEXIS 149156, at *7-9 (D. Conn. Aug. 20, 2024) (discussing factors that may establish an individual defendant's personal involvement).

against them in their individual capacity for money damages where their conduct does 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Raspardo, 770 F.3d at 116 (quoting Harlow, 457 U.S. at 818). See also Ying Jing Gan, 996 F.2d at 531 (citing cases). To determine whether a particular right was clearly established at the time the Individual Defendants allegedly acted, this court should consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Ying Jing Gan, 996 F.2d at 532 (citations omitted). "Assertion of the privilege should be upheld unless the 'contours of the right' were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The Individual Defendants are entitled to judgment as a matter of law on Plaintiff's section 1983 claims by reason of qualified immunity when the District gave Plaintiff a letter of reprimand for unprofessional and inappropriate language during the professional development training. It is undisputed that Plaintiff called the training – aimed at understanding and combatting the reasons for poor student engagement during Covid-19 remote learning – "BS," i.e., "bullshit." Based on First Amendment decisional law, qualified immunity is appropriate when it is clear that Plaintiff's speech addressed his own personal grievance with the professional development training and Plaintiff did not speak as a private citizen on a matter of public concern. See, e.g., Lynch v. Ackley, 811 F.3d 569, 581 (2d Cir. 2016) (individual defendant was entitled to qualified immunity because "it was far from clear" that the plaintiff's speech at a union meeting regarding a flex time policy "asserted a matter of public concern, rather than a personal grievance"); Payson v. Board of

Education of Mount Pleasant Cottage School, No. 14cv9696, 2017 U.S. Dist. LEXIS 154296, at *89-91 (S.D.N.Y. Sep. 20, 2017) (individual defendants were entitled to qualified immunity because it was not clear whether the plaintiff was acting as a private citizen or public employee or whether the speech involved a matter of public concern).

Accordingly, to the extent Plaintiff asserts section 1983 claims against the Individual Defendants in their individual capacities, Ms. Torres-Rodriguez, Mr. Wilson and Ms. Avicolli are entitled to judgment as a matter of law on Counts One and Two of the Complaint.

C. **Defendants Are Entitled to Summary Judgment on Plaintiff's First Amendment Retaliation Claim**

Plaintiff brings claims against the District and Individual Defendants under section 1983 alleging that they retaliated against him for exercising his right to free speech in violation of the First Amendment. (Compl., Count One, ¶s 103, 106.) Plaintiff's retaliation claim fails as a matter of law.

To state a claim under section 1983, Plaintiff must prove that Defendants, while acting under color of state law, denied him a constitutional or federal statutory right. See West v. Atkins, 487 U.S. 42, 48 (1988); Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). Here, in order to prevail on his First Amendment[6] retaliation claim, Plaintiff must show: (1) he was engaged in activity protected by the First Amendment; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and adverse employment action. See Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015); Lee-Walker v New York City Dep't of Educ., 220 F. Supp. 3d 484, 490 (S.D.N.Y. 2016). Plaintiff did not engage in activity protected by the First Amendment and summary judgment is appropriate.

---

[6] The Fourteenth Amendment applies the First Amendment to actions by state and municipal officials. See, e.g., Bd. of Educ., Island Trees Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 855 n.1 (1982).

The law is clear that public employees like Plaintiff "must by necessity accept certain limitations on his or her freedom, because his or her speech can contravene governmental policies or impair the proper performance of governmental functions." Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 593 F.3d 196, 201 (2d Cir. 2010) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418-419 (2006)). Thus, "[t]he Supreme Court's employee-speech jurisprudence reflects 'the common sense realization[s] that government offices could not function if every employment decision became a constitutional matter,' and that 'government officials should enjoy wide latitude in managing their offices without intrusive oversight by the judiciary in the name of the First Amendment.'" Weintraub, 593 F.3d at 201 (quoting Connick v. Myers, 461 U.S. 138, 143, 146 (1983)). "Accordingly, the Supreme Court has strived 'to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of [the government], as an employer, in promoting the efficiency of the public services it performs through its employees.'" Weintraub, 593 F.3d at 201 (quoting Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 568 (1968)). See also Connick, 461 U.S. at 149 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark -- and certainly every criticism directed at a public official -- would plant the seed of a constitutional case….the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs"). Multiple district and circuit courts have held that teachers' speech is not protected by the First Amendment. See discussion infra.

### 1.  Plaintiff did not speak as a private citizen on a matter of public concern.

A public employee's speech is protected by the First Amendment only when he speaks as a private citizen on a matter of public concern. Garcetti, 547 U.S. at 418. "[W]hen a public

employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147. Thus, put another way, if "the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'" Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (quoting Garcetti, 547 U.S. at 418)). See also Grillo v. N.Y.C. Transit Auth., 291 F.3d 231, 235 (2d Cir. 2002) (plaintiff must show that his speech was "made as a citizen on matters of public concern rather than as an employee on matters of personal interest"). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Connick, 461 U.S. at 147-148; Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991).

Here, the content, form, and context of Plaintiff's speech makes clear that Plaintiff was airing his personal grievances with the District's professional development training and not speaking as a private citizen on a matter of public concern. For example:

- Plaintiff's speech took place during a professional development training session. (Rule (56(a)(1) Stmt. ¶s 32, 38-39, 41.)

- Attending professional development was a job requirement for all District teachers, including Plaintiff. (56(a)(1) Stmt. ¶ 26-28.)

- Plaintiff's speech was directed to other teachers who were also participating in the professional development training as part of their duties. (56(a)(1) Stmt. ¶s 33, 38-39.)

- The content of the particular professional development training was to discuss concerns about student engagement during the extended period of distance learning necessitated by the Covid-19 pandemic. (56(a)(1) Stmt. ¶s 30-31.)

Plaintiff's speech, particularly in this context, was clearly not speech of a private citizen on a matter of public concern. Citizens who do not work for the District do not participate in the type of professional development session at issue in this case which weighs strongly against a finding that Plaintiff spoke as a private citizen. See, e.g., Lee-Walker v. New York City Dep't of Educ., 220 F. Supp. 3d 484, 493 (S.D.N.Y. 2016) (no First Amendment protection where teacher spoke "only to several school administrators rather than to the public," and her concerns regarded her own lesson plans "for which there is no relevant citizen analogue"). As a general rule, "activities required of the employee as part of his employment duties are not performed 'as a citizen' if they are not 'the kind of activity engaged in by citizens who do not work for the government....'" Jackler v. Byrne, 658 F.3d 225, 237 (2d Cir. 2011) (quoting Garcetti, 547 U.S. at 423)). Plaintiff's speech occurred during a mandatory professional development training related to his employment as a teacher of remote students struggling with engagement during the Covid-19 pandemic and, as such, his speech was not that of a private citizen.

The content of Plaintiff's speech – calling the professional development training "BS" – also makes clear that he was airing his own personal grievance with the District's training. Connick, 461 U.S. at 154 (no First Amendment protection because employee questionnaire relating to trust in supervisors and office morale "is most accurately characterized as an employee grievance concerning internal office policy" and not of public import); Grillo v. New York City Transit Auth., 291 F.3d 231, 235-236 (2d Cir. 2002) (where employee voiced "objections to the unmanliness of certain management techniques, there is no evidence that these statements were uttered for any other reason than to protect [the plaintiff's] own rights or to air his personal grievances"); Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 962-64 (9th Cir. 2011) (high school teacher's speech was made "as an employee, not as a citizen," and therefore could not form

the basis of a First Amendment claim); Ezekwo, 940 F.2d at 781 ("viewed objectively and as a whole, Ezekwo's statements did not address a matter of public concern. Her complaints were personal in nature and related to her own situation within the HHC residency program….Ezekwo was not on a mission to protect the public welfare"). Even if Plaintiff made his comments publicly, rather than during the District's professional development training, calling the training "BS" still would convey no information to the public at all other than the fact that Plaintiff disagreed with the content of the training. Connick, 461 U.S. at 154 (noting that employee questionnaire even "if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo").

Accordingly, when Plaintiff expressed his personal dispute with the professional development training he did so as a District employee and not as a private citizen addressing a matter of public concern.

> **2. Plaintiff's speech was pursuant to his "official duties" and not as a private citizen.**

Speech made by employees "pursuant to … official duties" rather than as a private citizen is not protected by the First Amendment. Lynch v. Ackley, 811 F.3d 569, 578 (2d Cir. 2016); Garcetti, 547 U.S. at 421-422. Even where there is no clear official duty to speak, courts in the Second Circuit focus on the "subject, manner, and context of the speech to determine whether it relates to topics that are indispensable prerequisites to effective performance of the speaker's primary employment responsibility…." Williams v. New York City Dept. of Correction, No. 19cv5200, 2020 U.S. Dist. LEXIS 16241, at *20 (S.D.N.Y. Jan. 30, 2020) (citation and internal quotations marks omitted). "Whether speech is pursuant to official duties is an 'objective' and 'practical' inquiry." Id. (citing Weintraub, 593 F.3d at 202).

Plaintiff's speech occurred during a mandatory professional development training to discuss low student engagement during the prolonged period of distance learning prompted by Covid-19. Plaintiff's speech addressed topics related the effective performance of Plaintiff's job as a teacher during the pandemic – exploring poor student engagement during a time of remote education. Accordingly, Plaintiff spoke pursuant to his official duties and not as private citizen and Defendants did not violate Plaintiff's First Amendment Rights. See, e.g., Garcetti, 547 U.S. at 421-422; Brown v. Chicago Bd. Of Educ., 824 F.3f 713, 715 (7th Cir. 2015) (teacher's impromptu discussion on racial epithets was pursuant to official duties and not private speech).

### 3.  The District had a legitimate interest in restricting injurious speech.

Even speech on a matter of public concern is not protected "unless the employee's First Amendment interests outweigh the government employer's legitimate interests in efficient administration." Pickering, 391 U.S. at 568. See also Connick, 461 U.S. at 142 (speech on a matter of public concern "must not be outweighed by an injury the speech could cause to the interest" of the public employer). Thus, "[w]hen an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences." Jackler v. Byrne, 658 F.3d 225, 237 (2d Cir. 2011) (citing Garcetti, 547 U.S. at 423). "The weighing of the competing interests is a matter of law for the court." Id.

Here, the District had a legitimate interest in the effective administration of its professional development that outweighed Plaintiff's interest to engage in his speech. See Connick, 461 U.S. at 154 (noting that any "limited First Amendment interest involved here does not require that [the employer] tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships"). Even if Plaintiff's speech touched remotely

on a matter of public concern – instead of his own personal grievance with the topic of the professional development training – the District did not violate Plaintiff's First Amendment right to free speech. Piggee v. Carl Sandburg Coll., 464 F.3d 667, 672 (7th Cir. 2006) (teacher's expression of homophobic views, couched in religious expression, "inhibited her ability to perform that job by undermining her relationship with [] students who disagreed with or were offended by her expressions of her beliefs").

The Second Circuit decision in Grillo is instructive. Grillo was disciplined following disruptive behavior during a required training program, including calling the class material "women's stuff" or instructions to "act like women" and commenting that women who dressed in a certain way "should expect to be grabbed and pulled on." Grillo, 291 F.3d at 233. Grillo argued that his comments were intended to spark debate about the employer's sexual harassment policy and, thus, his speech was on a matter of public concern protected by the First Amendment. The Second Circuit rejected Grillo's argument noting that even if his crude remarks implicated a matter of public concern (sexual harassment), his employer "was justified in restricting his speech given the mildness of the sanction (a rebuke), the comment's tenuous connection to matters of public concern, and its significant potential for disruption." Grillo, 291 F.3d at 236.

Similarly, the District was justified in taking the action the District took. Plaintiff only received a mild sanction by way of a letter of reprimand. The reprimand did not impact Plaintiff's salary or employment status in any way. In fact, Plaintiff retired several years later – after a thirty-five-year career. Plaintiff's comments also had no connection to any matter of public concern. Finally, Plaintiff's comments had the potential for disruption and indeed were disruptive as evidenced by the fact that an employee complained about Plaintiff's speech. (56(a)(1) Stmt. ¶s 42, 52.) See, e.g., Grillo, 291 F.3d at 235 (employer was justified in restricting Grillo's speech);

18

<u>Connick</u>, 461 U.S. at 153 ("the fact that [the employee] … exercised her rights to speech at the office supports [the employer's] fears that the functioning of his office was endangered").

    D.   <u>**Defendants Are Entitled To Summary Judgment On Plaintiff's "Compelled Speech" Claim**</u>

Plaintiff also claims that the District and Individual Defendants violated his First Amendment rights by forcing him to "voice or pledge his support for their advancement of critical race theory and opinions regarding racial privilege…." (Compl., Count Two, ¶s 115-116.) As with his retaliation claim, Plaintiff's "compelled speech" claim fails as a matter of law.

The First Amendment "includes both the right to speak freely and the right to refrain from speaking at all." <u>Janus v. AFSCME, Council 31</u>, 585 U.S. 878, 892 (quoting <u>Wooley v. Maynard</u>, 430 U. S. 705, 714 (1977)). Thus, the "freedom of speech prohibits the government from telling people what they must say." <u>Rumsfeld v. Forum for Academic & Institutional Rights, Inc.</u>, 547 U.S. 47, 61 (2006).

As a practical matter, Plaintiff's "compelled speech" claim fails because Plaintiff was not compelled to speak at all. To the contrary, the District explicitly advised Plaintiff and all participants in the professional development training "[y]ou do not have to share." (Compl., ¶ 29; 56(a)(1) Stmt. ¶s 32-34.) Thus, whether to speak and what to say during the professional development training was within Plaintiff's sole discretion. <u>Compare</u> <u>W. Va. State Bd. of Educ. v. Barnette</u>, 319 U.S. 624, (1943) (compelling students to salute and recite Pledge of Allegiance); <u>Wooley</u>, 430 U.S. 705 (compelling citizens to bear political message on license plates). As set forth more fully above, once Plaintiff elected to speak, the District had a legitimate interest in restricting speech that was disruptive and inappropriate. Accordingly, Plaintiff's "compelled speech" claim fails as a matter of law.

**IV.** **CONCLUSION**

For all of the foregoing reasons, Defendants' Motion for Summary Judgment should be granted in its entirety.

**DEFENDANTS,**
**HARTFORD BOARD OF EDUCATION,**
**LESLIE TORRES-RODRIGUEZ,**
**EDWARD WILSON, JR., and**
**TRACY AVICOLLI**

By:    */s/ Margaret J. Strange*
Margaret J. Strange (ct08212)
Margaret.Strange@jacksonlewis.com
Sara R. Simeonidis (ct25566)
Sara.Simeonidis@jacksonlewis.com
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that on February 5, 2025, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing as indicated below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


*/s/ Sara R. Simeonidis*
Sara R. Simeonidis

21