UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN GRANDE,<br>        Plaintiff,<br><br>v.<br><br>HARTFORD BOARD OF EDUCATION;<br>LESLIE TORRES-RODRIGUEZ, in her<br>individual capacity and her official capacity<br>as Superintendent of Hartford Public<br>Schools; EDWARD WILSON, JR., in his<br>individual capacity and his official capacity<br>as Staff Attorney/Executive Director of<br>Internal Investigations and Security of<br>Hartford Public Schools; and TRACY<br>AVICOLLI, in her individual capacity and<br>her official capacity as Director of Arts<br>and Wellness for Hartford Public Schools,<br>        Defendants. | CIVIL ACTION NO: 3:24-cv-00010-SFR<br><br><br><br><br><br><br><br><br><br><br><br><br><br>FEBRUARY 5, 2025 |

**DEFENDANTS' RULE 56(a)(1) STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56(a)(1) of this Court, Defendants Hartford Board of Education, Leslie Torres-Rodriguez, Edward Wilson, Jr. and Tracy Avicolli (collectively "Defendants") hereby asserts the following material facts that are not in dispute for purposes of their Motion for Summary Judgment:

1. Plaintiff commenced employment with the Hartford Board of Education (the "District") in 1989 as a physical education teacher. (Pl. Dep. at 31.)[1]

---

[1] The cited portions of Plaintiff John Grande's deposition, conducted on July 30, 2024, are filed contemporaneously herewith as Exhibit A and referred to herein as "Pl. Dep. at ___."

2.      The Hartford Board of Education oversees the operation of the Hartford Public Schools. (Torres-Rodriguez Dep. at 17-18.)[2]

3.      Hartford Public Schools is one of the largest school districts in Connecticut with approximately 3500 employees working in 39 schools serving 16,500 students. (www.hartfordschools.org; Wilson Dep. at 31, 142.)[3]

4.      The District is an equal employment opportunity employer with strong discrimination policies. (Exhibit F; Wilson Dep. at 17-18.)[4]

5.      The District also has a policy regarding employee freedom of speech. (Exhibit G; Wilson Dep. at 20.)[5]

6.      In May 2006, Plaintiff received a counseling letter following an internal investigation into an incident involving Plaintiff's alleged restraint of a student during a physical education class. (Exhibit H; Pl. Dep. at 213.)[6]

7.      The District advised Plaintiff to "take great care in the future to facilitate social development and to be sensitive to the needs of emotionally fragile students." (Exhibit H.)

8.      The District also advised Plaintiff that future misconduct could lead to disciplinary action, up to and including termination of employment. (Exhibit H.)

---

[2] The cited portions of Defendant Leslie Torres-Rodriguez's deposition, conducted on November 20, 2024, are filed contemporaneously herewith as Exhibit D and referred to herein as "Torres-Rodriguez Dep. at ___."

[3] The cited portions of Defendant Edward Wilson's deposition, conducted on November 13, 2024, are filed contemporaneously herewith as Exhibit B and referred to herein as "Wilson Dep. at ___."

[4] A copy of the District's Equal Employment Opportunity and Nondiscrimination Policies, identified at Mr. Wilson's deposition as Exhibit EW3, are filed contemporaneously herewith as Exhibit F.

[5] A copy of the District's Freedom of Speech Policy, identified at Mr. Wilson's deposition as Exhibit EW4, is filed contemporaneously herewith as Exhibit G.

[6] A copy of the Plaintiff's counseling letter dated May 3, 2006, identified at Plaintiff's deposition as Exhibit 20, is filed contemporaneously herewith as Exhibit H.

9. In March 2017, Plaintiff received a documented verbal warning for threatening and intimidating behavior and was required to attend harassment training. (Exhibit I; Pl. Dep. at 214.)[7]

10. Once again, the District advised Plaintiff that future misconduct could lead to disciplinary action, up to and including termination of employment. (Exhibit I.)

11. Effective March 17, 2020, Hartford Public Schools closed to in-person instruction in compliance with Governor Ned Lamont's Executive Order in response to the Covid-19 pandemic. (Exhibit J.)[8]

12. In fall 2020, Plaintiff still was teaching remote physical education classes to his students. (Pl. Dep. at 81.)

13. Plaintiff's direct supervisor at the time was Tracy Avicolli, the Director of Arts and Wellness. (Avicolli Dep. at 20-21.)[9]

14. Ms. Avicolli, in her role as Director of Arts and Wellness, sent a survey to teachers within her department regarding the level of student engagement during remote classes. (Avicolli Dep. at 94.)

15. Plaintiff acknowledged that "[n]ot many [students] showed up" for Plaintiff's remote physical education classes during this time period. (Pl. Dep. at 82.)

16. Plaintiff did not know why so many students did not come to class but thought "[t]hey probably didn't have somebody at home that had to get them on [the computer]." (Pl. Dep. at 82-83.)

---

[7] A copy of the Plaintiff's documented verbal warning dated March 8, 2017, identified at Plaintiff's deposition as Exhibit 21, is filed contemporaneously herewith as Exhibit I.

[8] A copy of the State of Connecticut Executive Order No. 7C, dated March 15, 2020, is filed contemporaneously herewith as Exhibit J. This Court can take judicial notice of Governor Lamont's Executive Orders pertaining to the Covid-19 pandemic. See, e.g., Jeffery v. City of New York, 113 F.4th 176, 183 n. 7 (2d Cir. 2024).

[9] The cited portions of Defendant Tracy Avicolli's deposition, conducted on November 14, 2024, are filed contemporaneously herewith as Exhibit C and referred to herein as "Avicolli Dep. at ___."

17. Plaintiff never attempted to find out why so many students were not attending his remote classes. (Pl. Dep. at 83.)

18. Plaintiff admitted that "[i]f [students] are not showing up for class there's a problem with engagement." (Pl. Dep. at 84.)

19. These issues were not unique to the Hartford Public Schools. There was a "national issue with student engagement and how to engage students in [remote] learning." (Wilson Dep. at 84.)

20. Ms. Avicolli determined that the results of those surveys "[w]arranted some more learning on how to increase student engagement in remote classes as this was a very difficult time for our students." (Avicolli Dep. at 94.)

21. As a result, Ms. Avicolli, in her role as Director of Arts and Wellness, scheduled a professional development training that was intended to address student engagement (Avicolli Dep. at 50) and "how we can better relate to our students in an environment that was very challenging." (Avicolli Dep. at 94.)

22. Ms. Avicolli, in her role as Director of Arts and Wellness, developed the professional development training program to align with the student engagement data for remote classes in physical education and unified arts. (Avicolli Dep. at 97.)

23. The District's English/Language Arts Department had recently done a similar professional development training "and it had gone very well and so based on their feedback and experience with their teachers in the Hartford Public Schools" Ms. Avicolli chose to use the presentation for an upcoming professional development training for the Unified Arts Department. (Avicolli Dep. at 96.)

24. On October 28, 2020, Ms. Avicolli, in her role as Director of Arts and Wellness, facilitated the professional development training. (Pl. Dep. at 147-148; Avicolli Dep. at 41.)

25. Leslie Torres-Rodriguez, Superintendent of the Hartford Public Schools, played no role in the October 28, 2020 professional development training for the Unified Arts Department. (Avicolli Dep. at 100; Torres-Rodriguez Dep. at 23.)

26. Plaintiff participated in the October 28, 2020 professional development training. (Pl. Dep. at 77, 90.)

27. The training was mandatory for the entire Unified Arts Department and part of his job duties to attend. (Pl. Dep. at 77, 90.)

28. The District requires that teachers participate in professional development training as part of their job responsibilities. (Avicolli Dep. at 106-107 (teachers are expected to attend professional development training unless they are absent).)

29. Plaintiff participated in many professional development trainings throughout his tenure with the District. (Pl. Dep. at 13.)

30. At the start of the professional development training, Ms. Avicolli presented the student engagement data she received from the surveys previously provided by the teachers in the Unified Arts Department. (Exhibit K at p. 2; Pl. Dep. at 79.)[10]

31. The professional development training then related the student engagement data to the Hartford Public School's Instructional Vision for students. (Exhibit K at p. 3.)

32. At the conclusion of the training, teachers were instructed to break up into smaller breakout groups to discuss how it felt to engage in an activity that was part of the training. (Exhibit K at p. 19; Pl. Dep. at 90.)

---

[10] A copy of the October 28, 2020 presentation, identified at Plaintiff's deposition as Exhibit 3, is filed contemporaneously herewith as Exhibit K.

33. The teachers attending the professional development training were told they did not have to share their feelings with the training exercise in the smaller group discussions if they were not comfortable doing so. (Exhibit K at p. 20; Pl. Dep. at 106.)

34. Plaintiff understood this meant that he did not have to speak at all during the small group discussion. (Pl. Dep. at 106-107.)

35. The teachers attending the professional development training also were told "to agree to disagree respectfully." (Exhibit K at p. 20; Pl. Dep. at 106.)

36. The District has policies requiring teachers and other staff to engage professionally with their colleagues. (Pl. Dep. at 132.)

37. Some of the teachers attending the small group discussion with Plaintiff chose not to share their feelings on the training exercise. (Pl. Dep. at 107.)

38. While the discussion group "started off quiet," Plaintiff "opened it up by saying that I just got man bashed and white shamed, but I'm going to sit there quietly." (Pl. Dep. at 91.)

39. Plaintiff also said, "I'm not buying into that white bashing BS." (Pl. Dep. at 101, 105.)

40. Plaintiff admits that "universally when someone says that's BS it would stand for bullshit." (Pl. Dep. at 159.)

41. Plaintiff voluntarily chose to make those comments during the professional development training. (Pl. Dep. at 107.)

42. A teacher in Plaintiff's small group discussion complained about the comments Plaintiff made during the professional development training. (Pl. Dep. at 100.)

43. The teacher sent an e-mail to Ms. Avicolli shortly after the professional

6

development training. (Pl. Dep. at 161-162; ; Exhibit L at Hartford 000641; Avicolli Dep. at 42.)[11]

44. Plaintiff did not know this teacher and never spoke with her prior to the professional development training. (Pl. Dep. at 162.)

45. The District commenced an investigation into the teacher's complaint about Plaintiff's comments during the professional development training. (Wilson Dep. at 40.)

46. Edward Wilson, the District's Executive Director of Internal Investigations and Security, appointed Suhail Aponte to investigate the complaint against Plaintiff. (Wilson Dep. at 9.)

47. Prior to October 2020, Mr. Wilson had not met Plaintiff and no one in the District ever spoke to Mr. Wilson about Plaintiff. (Wilson Dep. at 50.)

48. Ms. Aponte was a Labor Investigator/Information Specialist for the District. Among her duties was investigating employee misconduct. (Aponte Dep. at 15-16.)[12]

49. The District identified the teachers who participated in the breakout room with Plaintiff during the professional development training on October 28, 2020. (Aponte Dep. at 25-26.)

50. Ms. Aponte proceeded to schedule interviews with each of the teachers who the District identified as potential witnesses to the complaint against Plaintiff. (Aponte Dep. at 19.)

51. Ms. Aponte's process when investigating was to meet with witnesses (remotely at the time) and then prepare written statements for the witnesses to review and approve. (Aponte Dep. at 19.)

---

[11] A copy of the October 28, 2020 email complaint, identified at Ms. Avicolli's deposition as Exhibit TA3, is filed contemporaneously herewith as Exhibit L.

[12] The cited portions of Suhail Aponte's deposition, conducted on December 13, 2024, are filed contemporaneously herewith as Exhibit E and referred to herein as "Aponte Dep. at ___."

52. Ms. Aponte interviewed the complaining teacher as part of her investigation, and she confirmed that Plaintiff stated "I am not buying into this white-bashing bullshit" in the breakout room for the professional development training. The teacher explained that Plaintiff's statement was "very disturbing," "deeply affects the community" served by Hartford Public Schools and "was disrespectful to the work that we are trying to get started in our department." (Exhibit M at Hartford 001527; Wilson Dep. at 77-78.)[13]

53. Ms. Aponte interviewed a second teacher from the breakout session who reported that Plaintiff was very dismissive and said: "I don't know about you guys, but I'm not buying into this white bashing bullshit." (Pl. Dep. at 173-174; Exhibit M at Hartford 001528.) According to this teacher, the small group discussion was "very uncomfortable" as a result of Plaintiff's comments. (Pl. Dep. at 174; Exhibit M at Hartford 001528.)

54. Ms. Aponte interviewed a third teacher who reported that Plaintiff's statements in the small group session "shifted the mood and the tone in the breakout room." (Pl. Dep. at 175; Exhibit M at Hartford 001529.)

55. The remaining teachers who were in the breakout room with Plaintiff advised Ms. Avicolli that they could not recall Plaintiff's exact comments, with one teacher reporting that he "[did] not remember hearing swear words." (Exhibit M at Hartford 001526 and 001530.)

56. In January 2021, Ms. Aponte also contacted Plaintiff as part of the District's investigation. (Pl. Dep. at 141-142.)

57. Plaintiff participated in the District's investigation and answered questions posed by Ms. Aponte. (Pl. Dep. at 118, 142; Exhibit M at Hartford 001525.)

58. After Ms. Aponte completed her investigation, she provided an investigation file to

---

[13] Copies of the statements from each of the teachers interviewed as part of the investigation, identified at Mr. Wilson's deposition as part of Exhibit EW13, are filed contemporaneously herewith as Exhibit M.

Mr. Wilson which included all of the statements she obtained as part of her investigation. (Aponte Dep. at 20; Wilson Dep. at 66-67.)

59.     Mr. Wilson, in his role as Executive Director of Internal Investigations, reviewed the investigative file and decided to schedule a pre-disciplinary meeting with Plaintiff. (Wilson Dep. at 66-67.) At that time, Mr. Wilson had not decided whether Plaintiff should be disciplined for his conduct during the professional development training. (Wilson Dep. at 67.)

60.     In October 2021, Edward Wilson, in his role as Executive Director of Internal Investigations, met with Plaintiff. During the pre-disciplinary hearing, Plaintiff answered questions posed by Mr. Wilson. (Pl. Dep. at 143-144.)

61.     Plaintiff also shared his opinion that the content of the professional development training was not relevant to his work as a physical education teacher. (Wilson Dep. at 84.)

62.     After reviewing the investigation file, including witness statements, and meeting with Plaintiff and considering all information provided by Plaintiff in writing and during the pre-disciplinary meeting, Mr. Wilson, in his role as Executive Director of Internal Investigations, made the determination that Plaintiff used inappropriate language during the professional development breakout session on October 28, 2020. (Wilson Dep. at 73-74.)

63.     Mr. Wilson, in his role as Executive Director of Internal Investigations, made the decision to discipline Plaintiff because of what he said and "how he communicated out in the breakout room, which impacted the training session." (Wilson Dep. at 103)

64.     Mr. Wilson was the sole decisionmaker for the decision to discipline Plaintiff. (Wilson Dep. at 103.) Mr. Wilson was not directed to discipline Plaintiff by anyone, and Mr. Wilson did not consult with any of his supervisors prior to issuing the letter of reprimand. (Wilson Dep. at 103, 120.)

65. At the conclusion of the District's investigation, Plaintiff received a written letter of reprimand "for making inappropriate and unprofessional comments" in the professional development small group discussion he attended on October 28, 2020. (Exhibit N; Pl. Dep. at 193.)[14]

66. Plaintiff was warned that future misconduct could lead to disciplinary action, including termination of employment. (Exhibit N.)

67. Plaintiff continued to work at the District after receiving the letter of reprimand and ultimately retired on October 1, 2024 after working for the District for thirty-five years. (Pl. Dep. at 10.)

                                              **DEFENDANTS,**
**HARTFORD BOARD OF EDUCATION,**
**LESLIE TORRES-RODRIGUEZ,**
**EDWARD WILSON, JR., and**
**TRACY AVICOLLI**

By:   */s/ Margaret J. Strange*
       Margaret J. Strange (ct08212)
       Margaret.Strange@jacksonlewis.com
       Sara R. Simeonidis (ct25566)
       Sara.Simeonidis@jacksonlewis.com
       Jackson Lewis P.C.
       90 State House Square, 8th Floor
       Hartford, CT 06103
       P: (860) 522-0404
       F: (860) 247-1330

---

[14] A copy of the letter of reprimand dated December 10, 2021, identified at Mr. Wilson's deposition as Exhibit 20, is filed contemporaneously herewith as Exhibit G of the statements from each of the teachers interviewed as part of Ms. Aponte's investigation, identified at Mr. Wilson's deposition as part of Exhibit EW13, are filed contemporaneously herewith as Exhibit L.

**CERTIFICATION OF SERVICE**

I hereby certify that on February 5, 2025, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing as indicated below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                      */s/ Sara R. Simeonidis*
                                                      Sara R. Simeonidis